UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

SAMIRAH and ENUNG,

              Plaintiffs,

        - against -

VARSHA MAHENDER SABHNANI and
MAHENDER MURLIDHAR SABHNANI,

              Defendants.

----------------------------------------------------------------X

★FILED★

2008 JUL 22  PM 3: 16

CLERK
U.S. DISTRICT COURT
E.D.N.Y.

Civil Action No.: _____

**COMPLAINT**

CV 08 2970

SPATT, J.

WALL, M.J.

## PRELIMINARY STATEMENT

1.    Plaintiffs Samirah and Enung, citizens of Indonesia, bring this action [...] caused by Defendants Varsha Mahender Sabhnani and Mahender Murlidhar Sabhnani. Defendants brought Plaintiffs to the United States—Samirah in February 2002 and Enung in January 2005—to work as indentured servants in Defendants' Long Island residence. Isolated, unable to speak English, and subject to physical and psychological abuse, Plaintiffs were forced to work or be on-call twenty-four hours a day, seven days a week with no time off, were compensated at a rate of pennies per hour, and subsisted without adequate food, medical attention, or proper living quarters.  In May 2007, after five years of degradation, exploitation, and abuse, Samirah escaped and the authorities were alerted.

2.    Defendants have been convicted and sentenced in related proceedings in this Court — *United States v. Varsha Mahender Sabhnani and Mahender Murlidhar Sabhnani*, Cr. No. 07 CR 429(S-1) (ADS)  — for violations of the Trafficking Victims Protection Reauthorization Act of 2005 ("TVPRA") and the Immigration and Naturalization Act. Plaintiffs now seek redress in the form of compensatory and punitive damages, attorneys'

1

fees and costs under the TVPRA, federal anti-racketeering laws, federal and state wage laws, and the common law for violations of their basic human and civil rights and established law.

## JURISDICTION AND VENUE

3.  Jurisdiction is conferred on the Court by 18 U.S.C. §§ 1595 and 1964(c); 28 U.S.C. §§ 1331, 1332 and 1337(a); and 29 U.S.C. § 216(b). The Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.  This Court has venue pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to this action occurred within this District, and Defendants reside and do business in this District. Venue is also proper pursuant to 18 U.S.C. § 1965.

## PARTIES

5.  Plaintiff Samirah, who has no last name, resided in Jakarta, Indonesia, until she entered the United States on a B-1 business visa on or about February 5, 2002.

6.  At all times relevant to this action, between approximately February 5, 2002 and May 12, 2007, Plaintiff Samirah were forced to reside and resided at 205 Coachman Place East, Muttontown, New York 11791.

7.  Plaintiff Enung, who has no last name, resided in Puncak, Indonesia until she entered the United States on a B-1 business visa on or about January 2, 2005.

8.  At all times relevant to this action, between approximately January 2, 2005 and May 13, 2007, Plaintiff Enung resided at 205 Coachman Place East, Muttontown, New York 11791.

9.     Defendants Varsha Mahender Sabhnani and Mahender Murlidhar Sabhnani are naturalized United States citizens who, upon information and belief, were married in 1981.

10.    Upon information and belief, Defendant Varsha Mahender Sabhnani is also known as "Madame," "Shirley," and "Shelly."

11.    Upon information and belief, Plaintiff Mahender Murlidhar Sabhnani is also known as "Mister."

12.    At all times relevant to this action, Defendants and their four children, who are all United States citizens, have resided at 205 Coachman Place East, Muttontown, New York 11791.

13.    Upon information and belief, at all times relevant to this action, Defendants have operated a successful perfume business, which manufactures products in the United States, United Kingdom, and Indonesia, and sells largely in the Middle East, out of offices located at 205 Coachman Place East, Muttontown, New York 11791.

## STATEMENT OF FACTS

### Enticement and Recruitment of Samirah and Enung

14.    In or about 2001, Plaintiff Samirah met with Defendant Varsha Mahender Sabhnani's mother, Mrs. Joti, in Indonesia. Mrs. Joti offered Plaintiff Samirah employment as a domestic worker for the Defendants in their home in New York. Mrs. Joti told Plaintiff Samirah that she would be paid approximately $200.00 per month for her work.

15.    Mrs. Joti assisted Plaintiff Samirah in obtaining a temporary B1-type business visa for travel to the United States.

16.    On or about February 5, 2002, Plaintiff Samirah traveled to the United States with Mrs. Joti and Mr. Naresh, Defendant Varsha Mahender Sabhnani's brother.

3

17.    While traveling to the United States, Mrs. Joti took Plaintiff Samirah's passport.

18.    Upon information and belief, upon Plaintiff Samirah's arrival in the United States, Defendant Varsha Mahender Sabhnani took possession of Plaintiff Samirah's passport.

19.    In or about 2004, Plaintiff Enung met with Mrs. Joti in Indonesia. Mrs. Joti offered Plaintiff Enung work as a domestic worker for the Defendants in their home in New York. Mrs. Joti told Plaintiff Enung that she would be paid 1.7 million Indonesian rupiah per month, which at the time was equivalent to a monthly salary of approximately $200.00.

20.    Mrs. Joti assisted Plaintiff Enung in obtaining a temporary visa for travel to the United States.

21.    On or about January 2, 2005, Plaintiff Enung traveled to the United States with Defendant Varsha Mahender Sabhnani's sister, Mrs. Rano, and Mr. Deepak, Mrs. Rano's husband.

22.    While traveling to the United States, Mr. Deepak was in possession of Plaintiff Enung's passport.

23.    Upon information and belief, upon Plaintiff Enung's arrival in the United States, Varsha Mahender Sabhnani took possession of Plaintiff Enung's passport.

### Labor at the Sabhnani's Residence

24.    Having knowingly and willfully conspired to lure Plaintiff Samirah from Indonesia with the promise of being paid $200.00 per month as a domestic worker, upon her arrival to the United States, Defendants unilaterally reduced her salary to 800,000 Indonesian rupiah per month (approximately $90.00 per month), confiscated her passport, and

4

subjected her to approximately five years of involuntary servitude and physical and psychological abuse in Defendants' household.

25. Having knowingly and willfully conspired to lure Plaintiff Enung from Indonesia with the promise of being paid approximately $200.00 per month as a domestic worker, upon her arrival in the United States, Defendants unilaterally reduced her salary to 1.5 million Indonesian rupiah per month or approximately $165.00 per month, confiscated her passport, and subjected her to approximately two years and five months of involuntary servitude and physical and psychological abuse in Defendants' household.

26. Plaintiff Samirah was a domestic worker of the Defendants at the Defendants' home located at 205 Coachman Place East, Muttontown, New York 11791, from on or about February 5, 2002 to on or about May 12, 2007.

27. Plaintiff Enung was a domestic worker of Defendants at Defendants' home located at 205 Coachman Place East, Muttontown, New York 11791, from on or about January 2, 2005 to on or about May 13, 2007.

28. Defendants' residence consisted of three levels of living quarters and an attached office from which Defendant Mahender operated his international perfume business.

29. Plaintiffs cleaned the office and office bathroom of the perfume business, in addition to cleaning various other parts of the residence.

30. Defendants each had the power to hire and supervise each Plaintiff, and did so.

31. Defendants each had the power to fire each Plaintiff.

32. Both Plaintiffs were required to perform numerous household duties, including, but not limited to, vacuuming, dusting, cleaning the kitchen and bathroom, cooking meals,

washing the laundry, hand washing the dishes, ironing, shoveling snow, and taking out the garbage.

33. Defendants paid Plaintiff Samirah 800,000 Indonesian rupiah per month (approximately $90.00) by remitting the money to her daughter in Indonesia. She was paid a total of 43 million Indonesian rupiah (approximately $4800.00, at a fixed exchange rate).

34. Defendants forced Plaintiff Samirah to work or be on-call 24 hours a day, 7 days a week with no days off for approximately five years.

35. Defendants paid Plaintiff Enung 1.5 million Indonesian rupiah per month (approximately $165.00) by remitting money to Enung's husband in Indonesia, including wages for a period of approximately three years at the beginning of Enung's employment.

36. Defendants forced Plaintiff Enung to work or be on-call 24 hours a day, 7 days a week with no days off for approximately 2 years and 5 months.

37. Each plaintiff worked or was on call approximately 168 hours per week.

38. Neither Plaintiff was ever paid the proper federal minimum wage for all her hours.

39. Neither Plaintiff was ever paid the proper state minimum wage for all her hours.

40. Neither Plaintiff was ever paid overtime for work performed over forty (40) hours a week.

41. Defendants willfully and intentionally failed to pay each Plaintiff her lawful wages.

42. Upon information and belief, Defendants willfully and intentionally did not maintain proper employment records of each of the Plaintiffs' employment.

## Abuse and Confinement in the Sabhnani's Residence

43. Defendants limited the Plaintiffs' meals to merely leftovers, sometimes denying Plaintiffs any food. Plaintiffs eventually ate food out of the garbage for sustenance. Plaintiffs were sometimes given food by other employees of Defendants.

44. When Defendants left on vacation, for approximately two months during the summers of 2005 and 2006, Defendants did not leave adequate food in the home for Plaintiffs.

45. Defendants restricted Plaintiffs movement by only allowing them to leave the home with Defendants' permission. Further, Defendant Varsha Mahender Sabhnani told Plaintiffs that their passports would be burned if they left Defendants' house.

46. Defendants forced Samirah to sleep on the carpet in front of the children's rooms and forced both Plaintiffs to sleep in the kitchen on a mat on the floor.

47. In or about June 2006, Defendant Varsha Mahender Sabhnani drove Plaintiffs to a neighbor's house at 135 Coachman Place East, Muttontown, NY 11791 and forced them to perform domestic work at that location.

48. Defendant Varsha Mahender Sabhnani verbally abused and disparaged Plaintiffs, calling them "thieves" and "crazy."

49. Defendant Varsha Mahender Sabhnani physically abused Plaintiffs, including, but not limited to, pulling their ears and hitting them on their faces, arms, and legs with rolling pins and brooms.

50. Defendants only allowed Plaintiff Samirah to wear clothing that was torn and exposed her genitals.

51. Defendants forced Plaintiff Samirah to wear prescription eyeglasses that she did not own or need, which prevented her from seeing clearly.

52.   Defendant Varsha Mahender Sabhnani further physically abused Plaintiff Samirah by pricking her with a knife on her face, back, chest, arms, and neck.

53.   Defendant Varsha Mahender Sabhnani threw boiling water on Plaintiff Samirah on at least three occasions.

54.   Defendant Varsha Mahender Sabhnani shaved Plaintiff Samirah's hair, including her pubic hair, stripped her naked, placed tape all over her body, and forcefully removed the tape.

55.   Defendant Varsha Mahender Sabhnani further physically and mentally abused Plaintiff Samirah by not allowing her to sleep and by forcing her to walk stairs as punishment throughout the night, take multiple showers, and wear wet clothes.

56.   Defendant Varsha Mahender Sabhnani forced Plaintiff Samirah to eat chilies, causing Plaintiff to vomit. Defendant then forced Plaintiff Samirah to eat the vomit.

57.   On or about and between February 5, 2002 and May 13, 2007, Defendant Varsha Mahender Sabhnani received and withheld letters addressed to Plaintiff Samirah.

58.   On or about December 12, 2004, February 1, 2007 and another date not presently known, Defendant Varsha Sabhnani forced Plaintiff Samirah to write dictated letters to her family which contained humiliating statements about Samirah, including admissions that Samirah, a follower of Islam, ate pork, was a "crazy person," urinated and defecated on herself and in the residence, ate her own vomit, walked around naked for others to see, wanted to live with "bad men," wished to "die" and had cast a spell for her children to die.

59.    On or about and between 2005 and May 13, 2007, Defendant Varsha Mahender Sabhnani threatened to have Plaintiff Enung's husband arrested in Indonesia and that Mahender Sabhnani together with Defendants' son, Rahul Sabhnani, would kill Enung's family.

60.    On or about and between 2005 and May 13, 2007, Defendant Varsha Mahender Sabhnani threatened to falsely report to the police that Plaintiffs stole money and jewelry.

### Samirah's Escape and Enung's Rescue

61.    Late in the evening of May 12, 2007, Plaintiff Samirah fled the Sabhnani residence and wandered the neighborhood until the morning, when she approached employees at a Dunkin' Donuts to ask for food. Upon seeing her injuries and ragged clothing, a Dunkin' Donuts' employee alerted the authorities.

62.    On or about May 13, 2007, when Defendants discovered that Plaintiff Samirah had fled, they attempted to locate her by driving around the area close to Defendants' residence.

63.    On or about May 13 2007, Plaintiff Samirah was taken to Nassau University Medical Center and interviewed through an Indonesian interpreter by immigration authorities.

64.    On or about May 13, 2007, Nassau police and federal immigration agents conducted a search of Defendants' residence at 205 Coachman Place East, Muttontown, New York 11791, where they found Plaintiff Enung hiding in a closet.

### Criminal Proceedings Against Defendants

65.    Defendants Varsha and Mahender Sabhnani were indicted by a grand jury sitting in this District on or about May 2007.

66.    On December 17, 2007, at the end of a seven-week trial, a jury convicted Defendants of the following criminal offenses: (1) conspiracy to commit forced labor in violation of 18 U.S.C. §§ 371; (2) two counts of forced labor under 18 U.S.C. §§ 1589 and 1594(a); (3)

conspiracy to harbor aliens in violation of 8 U.S.C. §§ 11324(a)(1)(A)(v)(I) and

1324(a)(1)(B)(iii); (4) two counts of harboring aliens in violation of 8 U.S.C. §§

1324(a)(1)(A)(iii), 1324(a)(1)(A)(v)(II) and 1324(a)(1)(B)(iii); (5) conspiracy to commit

peonage in violation of 18 U.S.C. §§ 1581(a) and 371; (6) two counts of peonage in

violation of 18 U.S.C. §§ 1581(a) and 1594(a); (7) conspiracy to commit document

servitude in violation of  18 U.S.C. §§ 1592 and 371; and (8) two counts of document

servitude in violation in 18 U.S.C. § 1592 and 1594(a).


## FIRST CAUSE OF ACTION

### Forced Labor
(18 U.S.C. §§ 1589, 1595)

67.     Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

68.     Plaintiffs are authorized to bring these civil claims against Defendants pursuant to the

civil remedies provision of the TVPRA, 18 U.S.C. § 1595.

69.     Defendants provided and obtained the labor and services of Plaintiffs.

70.     Defendants established a pattern by threats, physical abuse, and verbal abuse that caused

the Plaintiffs to believe that, if they did not provide such labor and services, Plaintiffs

would suffer serious harm or physical restraint.

71.     Defendants' intentional acts constitute a violation of 18 U.S.C. § 1589.

72.     Defendants have been convicted of two counts of forced labor in violation of 18 U.S.C.

§ 1589.

73.     Plaintiffs are entitled to an award of compensatory and punitive damages to be

determined, reasonable attorneys' fees, and costs.

## SECOND CAUSE OF ACTION

### Slavery, Peonage, and Involuntary Servitude

(U.S. Cont. amend. XIII, 18 U.S.C. §§ 1581, 1584, and 42 U.S.C. § 1994)

74.    Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

75.    Defendants knowingly and willfully held Plaintiffs in involuntary servitude and brought

Plaintiffs to the United States to be so held, in violation of 18 U.S.C. § 1584, which

incorporates the 13th Amendment's bar on slavery and involuntary servitude, and 42

U.S.C. § 1994.

76.    Defendants have been convicted of two counts of peonage in violation of 18 U.S.C.

§ 1581(a).

77.    Plaintiffs are entitled to an award of compensatory and punitive damages to be

determined, damages as a result of pain and suffering, attorneys' fees, and costs.

## THIRD CAUSE OF ACTION

### Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor

(18 U.S.C. §§ 1590, 1595)

78.    Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

79.    Plaintiff is authorized to bring these civil claims against Defendants pursuant to the civil

remedies provision of the TVPRA, 18 U.S.C. § 1595.

80.    Defendants knowingly and willfully recruited, provided, transported, and obtained the

Plaintiffs to the United States by fraud, force, and coercion to be held in involuntary

servitude and forced labor, in violation of 18 U.S.C. § 1590.

81.    Plaintiffs are entitled to an award of compensatory and punitive damages to be

determined, reasonable attorneys' fees, and costs.

## FOURTH CAUSE OF ACTION
### Federal Racketeer Influenced and Corrupt Organizations Act
(18 U.S.C. § 1962)

82.  Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

83.  Plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"), are brought against Defendants.

84.  Each Plaintiff is a "person" with standing to sue within the meaning of 18 U.S.C. § 1964(c).

85.  Each Defendant is a "RICO person" within the meaning of 18 U.S.C. § 1961(3).

86.  Defendants are a married couple, members of a larger household, and operators of an international perfume business, and therefore constitute an enterprise (each a "RICO Enterprise") within the meaning of 18 U.S.C. § 1961(4).


**Predicate Acts**

87.  Defendants knowingly and willfully committed the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1)(B), and conspired to conduct or participate in the affairs of a RICO Enterprise through a pattern of numerous acts of racketeering activity:

   a.  Peonage in violation of 18 U.S.C. § 1581.

   b.  Forced labor in violation of 18 U.S.C. § 1589.

   c.  Unlawful conduct with respect to documents in violation of 18 U.S.C. § 1592.

   d.  Involuntary servitude in violation of 18 U.S.C. § 1584.

   e.  Harboring aliens in violation of 8 U.S.C. § 1324.

   f.  Extortion in violation of 18 U.S.C. § 1951.

88. Defendants knowingly and willfully committed the following predicate "racketeering activity" offenses under 18 U.S.C. § 1961(1)(A), and conspired to conduct or participate in the affairs of a RICO Enterprise through a pattern of numerous acts of racketeering activity:

    a. Kidnapping in violation of N.Y. Penal Law §§ 135.20 and 135.25.

### Pattern of Related Racketeering Acts

89. Defendants committed these numerous predicate acts repeatedly and continuously over a period of approximately 5 years. Defendants forced Plaintiffs to work or be on-call 24 hours a day, 7 days a week with no days off for a period lasting approximately 5 years for Plaintiff Samirah and approximately 2 years and 5 months for Plaintiff Enung.

90. Throughout Plaintiffs' employment, Defendants paid them an hourly rate less than the full minimum wage, as codified by 29 U.S.C. §§ 206 and 218 and as required by New York state law, New York Labor Law § 650, et. seq.

91. Defendants did not compensate Plaintiffs for their overtime work.

92. These lost regular and overtime wages constitute an injury to business or property under 18 U.S.C § 1964(c).

93. These lost wages are the direct result of the actions of the Defendants.

94. Defendants' actions were related to each other, directed toward the same victims, had the same results, had the same participants, and were committed for the same or similar purposes, to obtain Plaintiff Samirah's services and labor for approximately 5 years and Plaintiff Enung's services and labor for approximately 2 years and 5 months at far below the required minimum wage. Defendants' actions thus demonstrate an extended continuous period of criminal activity and a threat of continued criminal activity.

95.   Defendants actions thus constitute a pattern of racketeering activity under 18 U.S.C. § 1961(5).

## RICO Enterprise I

96.   Defendants, along with their daughter, Dakshina Sabhnani and other family members, functioned as a continuous unit by working together to unlawfully procure the daily and continuous services of Plaintiffs, and they are thus part of an association-in-fact enterprise.

97.   Defendants procured Plaintiffs' daily services by continuous threats and physical abuse.

98.   Defendants and other family members placed Plaintiffs in a state of complete dependence due to Plaintiffs' lack of English skills, lack of money, and unlawful status in the United States.  Defendants repeatedly withheld adequate food, clothing, medical care, sleep, and places to sleep from Plaintiffs.  Plaintiffs were often forced to eat from the trash and were forced to beg for food from Defendants' gardener (Anthony Pascarella) and perfume export manager (Deborah Litras).

99.   Defendants cooperated in carrying out the various activities of the enterprise, which included transporting Plaintiffs from Indonesia to Defendants' home, ordering Plaintiffs to perform various household duties, forcing Plaintiffs to sleep on the floor of one of the kitchens in the residence on sections of carpet, taking Plaintiff Samirah's passport, and taking Plaintiff Enung's passport and never returning it.

100.   The Defendants' enterprise had the following structure:  Defendants generally worked together as a unit to obtain services from Plaintiffs by threats and physical abuse. Defendant Varsha was primarily responsible for directing household chores for the Plaintiffs and was primarily responsible for issuing threats and inflicting physical abuse

14

and punishment on Plaintiffs. Defendant Mahender also directed household chores and was responsible for reporting actions of the Plaintiffs, including eating food from the trash and sleeping in one of the bathrooms, to Defendant Varsha so that she could carry out various physical punishments. Defendant Mahender was also primarily responsible for supplying food to Plaintiffs when Defendants were away from home for extended periods.

101.    Defendants' daughter, Dakshina Sabhnani, was responsible for reporting various Plaintiffs' actions to Defendant Varsha so that they could be punished. Dakshina Sabhnani took a photograph of Plaintiff Samirah so that Defendant Varsha could use it as a threat against Plaintiff Samirah.

102.    Defendant Varsha's continued and systematic physical abuses of Plaintiff Samirah included pulling her ears while digging her fingernails into her flesh causing bloody wounds, throwing boiling water on her, cutting her with a knife, pinching and twisting the flesh on her forearms until they bled, hitting her with objects including an umbrella, a broom, and a wooden rolling pin; wrapping her nude body and face in cellophane tape, forcing her to eat large quantities of hot chili peppers, forcing her to eat her own vomit, forcing her to take repeated cold showers, forcing her to run up and down flights of stairs, cutting off her head hair, shaving her pubic hair, and forcing her to wear, while working around the residence, three pairs of eyeglasses that were joined together by, and covered with, cellophane tape. While pulling Plaintiff Samirah's ears and cutting her with a knife, Defendant Varsha told Plaintiff Samirah that if she resisted or tried to fight back, Defendant Mahender and the defendants' son, Rahul Sabhnani, would kill Plaintiff Samirah.

103. Defendant Varsha also inflicted similar punishments upon Plaintiff Enung. Defendant Varsha struck Plaintiff Enung in the face with a closed fist while wearing a ring, struck her in the face with a metal spoon, and finally, struck her with a glass pyrex cooking dish. Defendant Varsha forced Plaintiff Enung to assist her in placing tape on Plaintiff Samirah's face and nude body and then directed Plaintiff Enung to rip the tape off quickly so that it would hurt Plaintiff Samirah. Defendant Varsha told Plaintiff Enung that if Plaintiff Enung did not do as directed, she would punish her more severely. Defendant Varsha threatened that if Plaintiff Enung ran away, she would have Plaintiff Enung's husband arrested in Indonesia because he had received advance payment of Plaintiff Enung's salary. Defendant Varsha also told Plaintiff Enung that if she ran away the police would shoot her if they found her.

104. Defendant Mahender further obtained services from Plaintiffs by taking Plaintiff Samirah to another person's home to perform domestic work and directing Plaintiffs to carry a heavy bronze statue without assistance.

105. Defendant Mahender knew of or witnessed the various punishments inflicted by Defendant Varsha, including visible injuries to Plaintiff Samirah's head, and on one occasion, Plaintiff Samirah being forced to pick up pieces of paper.

106. These activities constitute the normal and regular way of conducting Defendants' enterprise.

107. These regular activities of the enterprise were separate and distinct from the predicate racketeering activities. The usual and daily activities of the enterprise included running Defendants' residence and perfume business, which included providing Plaintiffs with food and directing Plaintiffs' daily activities and chores. The daily activities of the

16

enterprise also included criminal activities distinct from the predicate racketeering activities, including threats, physical abuse, and punishing Plaintiffs in various ways.

108. Defendants' enterprise received benefits from the pattern of racketeering activity, including continuous and virtually free services and labor from Plaintiffs.

109. Defendants' structure, organization, and activities constitute an association-in-fact enterprise under 18 U.S.C. § 1961(4).

110. Defendant's actions had an effect on interstate or foreign commerce by failing to pay either Plaintiff the federal or state minimum wage.

111. Defendant's actions had an effect on interstate or foreign commerce by paying Plaintiff Samirah's salary to her daughter in Indonesia.

**RICO Enterprise II**

112. Defendants' residence consisted of three levels of living quarters and an attached office from which Defendant Mahender operated his international perfume business.

113. The perfume business was a partnership, corporation, association, or other legal entity and thus an enterprise under 18 U.S.C. § 1961(4).

114. The activities of perfume business had a nexus to the predicate acts of racketeering activity as follows.  The perfume business was operated in the same residence in which the predicate acts of racketeering activity occurred, and was run by the same participants. Plaintiffs were often forced to perform their services by providing refreshments to Defendant Mahender Sabhnani while he was at work, cleaning the office and bathroom in the office of the perfume business.

115. The perfume business enterprise was distinct from the Defendants and other family members conducting the affairs of the enterprise.

116.    The perfume business enterprise had the following structure:  Defendant Mahender was
        responsible for running the primary affairs of the perfume business.  Defendant
        Mahender also directed Plaintiffs to clean the office and office bathroom of the perfume
        business, in addition to directing Plaintiffs to clean various other parts of the residence.
        Defendant Varsha was responsible for carrying out threats and physical abuse on
        Plaintiffs.  Defendant Mahender reported actions of the Plaintiffs to Defendant Varsha,
        and Defendant Varsha then executed the various punishments upon Plaintiffs.

117.    These activities constitute the normal and regular way of conducting Defendants'
        perfume business enterprise.

118.    These regular activities were separate and distinct from the predicate racketeering
        activities.  The usual and daily activities of the perfume business included the
        manufacture, importation and exportation of perfume, activity which was directed from
        the office located adjacent to or in the residence.

119.    Defendants' perfume business enterprise received benefits from the pattern of
        racketeering activity, which included continuous and virtually free services and labor
        from Plaintiffs.

120.    The perfume business enterprise had an effect on interstate or foreign commerce by
        exporting and importing perfume to foreign countries.

**Violation of Section 1962**

121.    Defendants have unlawfully conducted and participated in the affairs of an enterprise, the
        activities of which affect interstate or foreign commerce, through a pattern of
        racketeering activity in violation of 18 U.S.C. § 1962(c), and conspired to conduct or

participate in the affairs of a RICO Enterprise through a pattern of numerous acts of racketeering activity, in violation of 18 U.S.C. § 1962(d).

122.   Plaintiffs are entitled under 18 U.S.C. § 1964(c) to recover treble damages for injuries sustained by Plaintiffs as a result of Defendants' violation of 18 U.S.C. §§ 1962(c) and (d).

## FIFTH CAUSE OF ACTION
### Federal Minimum Wage Violation
(29 U.S.C. § 201 et seq.)

123.   Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

124.   Throughout Plaintiffs' employment, Defendants paid them an hourly rate less than the full minimum wage, as codified by 29 U.S.C. §§ 206 and 218.

125.   Defendants' intentional failure to pay Plaintiffs the proper federal minimum wage violates 29 U.S.C. § 201 et seq. and the U.S. Department of Labor regulations.

126.   Plaintiffs are entitled to an award of damages for unpaid minimum wages in an amount equal to the proper federal minimum wage Plaintiffs should have been paid, liquidated damages, attorneys' fees, and costs.

## SIXTH CAUSE OF ACTION
### Federal Overtime Violation
(29 U.S.C. § 201 et seq.)

127.   Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

128.   At all times relevant to this Complaint, each Plaintiff consistently worked for Defendants for more than forty (40) hours per week.

129.   Defendants failed to comply with 29 U.S.C. § 201 et seq. by failing to properly compensate Plaintiffs at an overtime wage rate for those hours Plaintiffs worked in excess of forty (40) hours per week.

130.   Defendants' intentional failure to pay Plaintiffs the proper overtime wage violates 29 U.S.C. § 201 et seq.

131.   Plaintiffs, thereby, have been damaged in an amount yet to be determined.

## SEVENTH CAUSE OF ACTION

### State Minimum Wage Violation

(New York Labor Law §§ 190 et. seq., 650 et. seq.)

132.   Plaintiffs allege and re-allege the paragraph above as if fully set forth herein.

133.   In all periods of Plaintiffs' employment, Defendants failed to pay Plaintiffs the proper minimum wage, as required by New York state law, New York Labor Law § 650, et. seq.

134.   As of March 31, 2000, New York law required New York employers to pay employees at least $5.15 per hour for each hour of time worked up to forty (40) hours of work per week, as codified in New York Labor Law § 652.

135.   As of January 1, 2005, New York required New York employers to pay employees at least $6.00 per hour for each hour of time worked up to forty (40) hours of work per week, as codified in New York Labor Law § 652.

136.   As of January 1, 2006, New York law required New York employers to pay employees at least $6.75 per hour for each hour of time worked up to forty (40) hours of work per week, as codified in New York Labor Law § 652.

137.   As of January 1, 2007, New York law required New York employers to pay employees at least $7.15 per hour for each hour of time worked up to forty (40) hours of work per week, as codified in New York Labor Law § 652.

138.   Defendants' intentional failure to pay Plaintiffs minimum wages violates New York Labor Law §§ 190 et seq. and 650 et seq. and the New York Department of Labor regulations.

139.   Plaintiffs are entitled to an award of damages for unpaid minimum wages in an amount equal to the proper state minimum wage Plaintiffs should have been paid, liquidated damages, attorney's fees, and costs.

## EIGHTH CAUSE OF ACTION

### New York State Overtime

(New York Labor Law §§ 190 et. seq., 650 et. seq. and NYCRR § 142-2.2)

140.   Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

141.   In all periods of Plaintiffs' employment, Defendants failed to pay Plaintiffs' overtime pay for work in excess of 40 hours per week.

142.   Defendants' intentional failure to pay Plaintiffs minimum wages for work over 40 hours per week violates New York Labor Law §§ 190, et seq. and 650, et seq. and the New York Department of Labor regulations, 12 NYCRR § 142-2.2.

143.   Plaintiffs each are entitled to an award of damages for overtime pay for work over 40 hours per week in an amount equal to the proper state overtime minimum wage Plaintiffs should have been paid, liquidated damages, attorneys' fees, and costs.

## NINTH CAUSE OF ACTION
### New York State Spread of Hours

(New York Labor Law §§ 190 et. seq. , 650 et. seq. (2008) and NYCRR § 142-2.4)

144.   Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

145.   Defendants' intentional failure to pay Plaintiffs an extra hour's pay for every day that Plaintiffs worked in excess of 10 hours violates New York Labor Law §§ 190 et seq. and

650 et seq. and the New York Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.4.

146.   Plaintiffs each are entitled to an award of an extra hour's pay for every day that Plaintiffs each worked in excess of 10 hours in an amount pursuant to New York Labor Law §§ 190, et seq. and 650, et seq. and New York Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.4, liquidated damages, attorney's fees, and costs.

## TENTH CAUSE OF ACTION
### False Imprisonment

147.   Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

148.   Defendants intentionally confined and restrained Plaintiffs in Defendants' home against Plaintiffs' will by use of threats and physical abuse.

149.   Defendants' intentional actions constitute false imprisonment.

150.   Plaintiffs are entitled to an award of compensatory and punitive damages to be determined, attorneys' fees, and costs.

## ELEVENTH CAUSE OF ACTION
### Assault and Battery

151.   Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

152.   Defendant Varsha Mahender Sabhnani intentionally placed Plaintiffs in apprehension of imminent harm or oppressive contact.

153.   Defendant's intentional acts constitute assault, and Plaintiffs suffered serious injury as a result.

154.   Plaintiffs are entitled to compensatory and punitive damages to be determined, attorneys' fees, and costs.

22

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that a judgment be granted as follows:

      a.  Awarding Plaintiff compensatory damages, liquidated damages, punitive

          damages and prejudgment interest;

      b.  Awarding Plaintiffs their attorneys' fees and costs; and,

      c.  Granting such other and further relief as is just and proper.


Dated: July 22, 2008
      New York, New York


                                  _____s/ Ivy Suriyopas_____
                                    Ivy O. Suriyopas (IS-7235)
                                    ASIAN AMERICAN LEGAL DEFENSE
                                    AND EDUCATION FUND
                                    99 Hudson Street, 12th Floor
                                    New York, New York 10013
                                    212-966-5932 x235


                                    _____
                                    David Loretto (DL-9206)
                                    Matthew L. Levine (ML-6247)
                                    FISH & RICHARDSON P.C.
                                    Citigroup Center - 52nd Floor
                                    153 East 53rd Street
                                    New York, NY 10022-4611
                                    212-765-5070

                                    Attorneys for Plaintiffs